**George T. VOLSKY, Plaintiff,**

v.

**LONE STAR AIRWAYS, INC., and
Leonard Blaylock, III, Defendants.**

**Civ. A. No. 83–2243.**

United States District Court,
District of Columbia.

Aug. 19, 1985.

Joseph M. Cahill, Dale A. Cotter, Washington, D.C., for plaintiff.

Roger C. Simmons, Michael F. Goldman, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This case came before the Court for a bench trial on April 11, 1985. The plaintiff seeks to recover payment for legal services he performed for the defendants. The Court has considered the evidence, the parties' oral arguments and the briefs filed thereafter, and concludes that the plaintiff is entitled to compensation in the amount of $54,094.74.

The basic factual background is not in dispute. In November 1980, the defendant Lone Star Airways employed the plaintiff George Volsky, a member of the District of Columbia Bar who specialized in practice before the Civil Aeronautics Board (CAB), to provide legal services in connection with Lone Star's efforts to obtain certification by the CAB. The proceedings already were in progress through the efforts of Lone Star's previous counsel. The defendant Leonard Blaylock, the principal stockholder and chief executive officer of Lone Star, and Mr. Volsky agreed that Lone Star would compensate Mr. Volsky at the rate of $100 per hour with a $2,000 retainer. The parties further agreed that Lone Star would pay Mr. Volsky $1,000 per month, with the remaining amount due and payable when Lone Star became fully funded.

In March 1982, Mr. Volsky had completed the aspect of the CAB proceedings for which he had been hired. He requested a personal guarantee and additional sums when he began additional, but related, work for Lone Star. Such work included (1) defending Mr. Blaylock in a suit by his previous CAB counsel for nonpayment of legal fees, (2) rewriting a petition for reconsideration of a CAB decision, and (3) drafting a petition for the recusal of a CAB

member. Mr. Volsky stated that this work could not be done for $1,000 per month and that more than $15,000 had accrued over and above the amounts received on a monthly basis. Mr. Blaylock executed a personal guarantee for the fees owed Mr. Volsky up to that time. According to both parties' testimony, more money was paid Mr. Volsky at that time, although there is no written document memorializing a change in the fee agreement.

No bills were sent by Mr. Volsky for the next 16 months. Mr. Blaylock admitted that the monthly payments varied in amount over this period, and only roughly averaged $1,000 per month.

Beginning in November 1982, Mr. Volsky began working with the law firm of Cooter & Gell in various capacities, developing from a tenant to a partner. When negotiations began for him to join the firm, Mr. Volsky had to clarify his financial situation with Lone Star. To that end, a meeting was held on April 12, 1983, between Mr. Blaylock, Mr. Volsky, and Mr. Dale Cooter.

At the April 12 meeting, Mr. Volsky asserted that he could not go forward unless his back fees were paid in full and a deposit were made for future services. Mr. Blaylock agreed to pay in several installments; $1,000 at the meeting, $4,000 on May 6, 1983, and two final payments of $2,500 on May 10 and May 25. All but the final payments were timely made. Mr. Blaylock untimely submitted checks for $2,500 which were returned for insufficient funds. To encourage payment, Mr. Volsky refused to file certain exhibits with the CAB. When the payments were made, the exhibits were submitted and the CAB proceedings went forward.

Sometime in the late spring of 1983, Mr. Volsky ceased his representation of Lone Star and submitted a final bill for $59,-094.74 (later amended to $54,094.74 to reflect a subsequent payment). Mr. Volsky formally withdrew his appearance in the CAB proceeding in the fall of that year.

The remaining disputed factual issues must be resolved on the basis of the credibility of the parties' testimony. The Court finds generally that the testimony presented on behalf of Mr. Volsky is more credible and convincing than that presented on behalf of the defendants. The defendants contend that Mr. Volsky is not entitled to any additional legal fees because the original fee agreement precludes recovery and, in any case, it was breached by Mr. Volsky. They also assert a counterclaim for damages resulting from Mr. Volsky's alleged malpractice.

■ If the original fee agreement were in effect, Mr. Blaylock would owe no more than $34,000 for the 34 months of legal representation since Lone Star has not become fully funded. Mr. Volsky contends that the agreement was modified in March 1982. The Court finds that Mr. Volsky has satisfied the burden of proving a revision in the agreement. *See* Opinion No. 29, Jan. 25, 1977, District of Columbia Ethics Committee. While it is unfortunate that the change was not reduced to writing, it is clear that both parties understood that a change had been made. In March 1982, Mr. Blaylock, for the first time, executed a personal guarantee of Lone Star's legal fees. Lone Star no longer kept to a $1,000 per month payment schedule. Finally, the nature and extent of the work performed by Mr. Volsky changed significantly at this time such that the former compensation would be unreasonable. An interim lack of billing (for a period of 16 months) is explained by the ongoing informal dialogue between the parties and does not represent a reliance on the previous billing arrangement. Furthermore, the Court finds no evidence of unfair pressure leading to the modification. Mr. Volsky had completed the work for which he was hired and, if the new fee arrangement were unsatisfactory, there was no reason new counsel could not be obtained to undertake the new projects for defendants. The Court finds that the parties were no longer bound, after March 1982, by the original fee agreement.

■ The Court further finds that the defendants have not shown that Mr. Volsky either negligently or intentionally mis-

handled the CAB proceedings such that Lone Star or Mr. Blaylock was prejudiced. The record lacks any testimony on behalf of the defendants to illustrate the standard of care required of attorneys in CAB proceedings. It is apparent that the CAB certification process is unique and complex. In this case, it was further complicated by a change in counsel, the use of a financial prospectus—prepared by another law firm—which structured Lone Star in an impossible form for certification, and Mr. Blaylock's reluctance to compensate Mr. Volsky adequately for his work. The Court finds that Mr. Volsky adequately represented Lone Star in its effort to secure CAB approval. The lack of expert testimony in support of Mr. Blaylock's counterclaim as well as Mr. Volsky's testimony as to the circumstances of his failure to file exhibits within specified time deadlines lead the Court to conclude that the counterclaim is without merit.

Accordingly, for the above reasons, it hereby is

ORDERED, that the Clerk shall enter judgment in the plaintiff's favor in the amount of $54,094.74. It hereby further is

ORDERED, that defendants' counterclaim is dismissed.

SO ORDERED.